[Filed April 26, 1886.]

## H. F. SUKSDORFF v. WILLIAM BIGHAM.

PLEADINGS—FORMS OF ACTION—ATTACHMENT VOID IN ACTIONS UPON TORTS. No attachment can legally issue in this state except in an action upon a contract, express or implied, for the direct payment of money, and the issuance of such process in any other kind of action is void. The nature and character of the action is to be ascertained by an examination of the facts alleged.

PLEADING—COMPLAINT—CONTRACT—TORT.—An allegation in a complaint that the plaintiff deposited with the defendants, who were bankers, a sum of money to be sent to a certain other bank, and that the defendants failed to send said sum, but converted it to their own use, does not necessarily imply an intent to claim for a tortious conversion of the money so deposited. Such an allegation, though vaguely worded, imports a contract to pay a sum of money in consideration of a deposit of the amount.

SAME—AMENDMENT.—Where a complaint is so indefinite and uncertain that its real character as in tort or in contract cannot be certainly determined, but the facts are such that an action upon contract for the payment of money would lie, it can be amended so as to uphold an attachment that has been already issued in the action.

SAME—ATTACHMENT.—Where, after an attachment has issued in a proper case, the complaint is amended by enlarging the sum demanded, such amendment does not render the attachment proceedings invalid, at least unless it appears that the amendment was made for the purpose of obtaining an undue advantage, or by including a new cause of action.

MULTNOMAH COUNTY. Plaintiff, and defendant, the Bank of Garfield County, appeal. Affirmed.

*Fred. V. Holman,* for Appellants.

An inspection of the complaints of Bigham and of. Webber & Foster will show the court that they are not actions on contract, but in tort for conversion of money, and were actions for the conversion of a species of property for which an action for conversion *could* be maintained in this state, and was maintained. (*Ramsby* v. *Beezley,* 10 Or. 50; *Sheppard* v. *Yocum,* 11 Id. 234.) Though it be admitted that Bigham and Webber & Foster might have had an action upon contract, yet having chosen to sue upon the tort, they are bound by their election. (*Hughes* v. *Vermont Copper Co.,* 77 N. Y. 207; *Comstock* v. *Hier,* 73 Id. 269; *Sheppard* v. *Yocum, supra;* *Budd* v. *Multnomah Street R'y Co.,* 12 Or. 276; *Kalchoff, Adm'x,* v. *Zœhrlant,* 40 Wis. 427.) The facts as to the greater part of the sums claimed by Bigham were such that he *must* sue in tort, if at all, since at the time his action was commenced, the necessary steps had not been completed to charge Danford & Ainsworth as drawers of bills of exchange. The allegation is that they were presented "for acceptance" (not for payment), and protested for "non-acceptance," not for non-payment. (1 Parsons on Bills and Notes, 338; 1 Daniell's Neg. Inst., sec. 617; 2 Id., sec. 1171; Byles on Bills, Sharswood's ed. *207.) Moreover, sufficient time had not elapsed after presentment and protest, to give Danford & Ainsworth the requisite notice. An attachment issued in an action in which the plaintiff is not by law entitled to such process is *void,* and may be attacked as such by a subsequent attaching creditor. (Drake on Attachment, secs. 262, 272; *Southern Bank of Missouri* v. *McDonald,* 46 Mo. 34; *Ward* v. *Howard,* 12 Ohio St. 161; see also *Hahn* v. *Salmon,* 20 Fed. Rep. 801; *Patrick* v. *Montader,* 13 Cal. 435.) The actions by Bigham and by Webber &

Foster being *ex delicto,* no attachment could issue therein, and the defendants being non-residents and not found within the state, it follows that the court *could not possibly* acquire jurisdiction of the parties defendant. (*Neff* v. *Pennoyer,* 95 U. S. 714.)    A plaintiff cannot, under the form of an amendment of his complaint, before trial, change the action from one of tort to one on contract, or the reverse. (*Supervisors* v. *Decker,* 34 Wis. 378; *Hackett* v. *California Bank,* 57 Cal. 335; *Lumpkin* v. *Collier,* 69 Mo. 170; *Lane* v. *Beaney,* 19 Barb. 51.)    An amendment attempting such a change is properly *not an amendment, but a substitution of a cause of action,* different in nature and substance from that originally stated. (*Supervisors* v. *Decker,* 34 Wis. 380.)    And cannot be made so as to affect intervening attachments. (*Willis* v. *Crooker,* 1 Pick. 204; *Fairfield* v. *Baldwin,* 11 Id. 388; *Speyer* v. *Ihmels,* 21 Cal. 288.)

*Charles H. Carey,* for Respondents.

The argument for the appellants ignores the fact that in the Bigham and Webber & Foster suits there was an appearance of the non-resident defendants, and that, therefore, the jurisdiction of the court did not depend upon the attachment. (Drake on Attachment, sec. 87; *Cooper* v. *Reynolds,* 10 Wall. 308; *Toland* v. *Sprague,* 12 Pet. 300; *Williams* v. *Stewart,* 3 Wis. 773.)    If in fact, therefore, any irregularities exist in those attachments, they cannot be taken advantage of by Suksdorff, or any other creditor. The judgments are conclusive. (*Skinner* v. *Moore,* 30 Am. Dec. 138; *Paine's Lessee* v. *Moreland,* 45 Id. 585; *Fridenberg* v. *Pierson,* 18 Cal. 152; *McComb* v. *Reed,* 28 Id. 285; *Porter* v. *Pico,* 55 Id. 165; *Harvey* v. *Foster,* 64 Id. 296; *Scrivener* v. *Dietz,* 8 West Coast Rep. 163; Drake on Attachment, sec. 273; Freeman on Judgments, sec. 487.)    If it can be fairly gathered from the

allegations, or the surrounding circumstances, that there is an intention to rely on the contract, the complaint is sufficient for that purpose. (Pomeroy's Rem., sec. 572.) The facts alleged show contracts express, as well as in some cases implied, and that the allegations of conversion and damage in some of the counts may be considered as mere surplusage. (Pomeroy's Rem., secs. 559–573; *Austin* v. *Rawdon*, 44 N. Y. 63, 68, 69; *Conaughty* v. *Nichols*, 42 Id. 83; *Ledwich* v. *McKim*, 53 Id. 307, 316; *Greentree* v. *Rosenstock*, 61 Id. 583; *Whereatt* v. *Ellis*, 58 Wis. 625.) And the mere fact that the amended complaint increased the claim will not dissolve an attachment, unless the increase is shown to have been made with an actual fraudulent intent. (*Mendes* v. *Freiters*, 16 Nev. 396; *Tilton* v. *Cofield*, 93 U. S. 163; *Patrick* v. *Montader*, 13 Cal. 435; *Felton* v. *Wadsworth*, 7 Cush. 587.) The cases of *Willis* v. *Crooker*, 1 Pick. 204, and *Fairfield* v. *Baldwin*, 11 Id. 288, when closely examined, will be found to go no further than this.

THAYER, J. The appellant Suksdorff commenced a suit in the court below against the respondents to have certain attachment proceedings taken by the latter against J. S. Danford and D. Ainsworth, partners under the name of Spokane County Bank, declared fraudulent and void; and to have attachment proceedings he had taken against said parties decreed to have priority over those of the respondents. It appears that the said Danford & Ainsworth, who evidently are a couple of knaves engaged in the banking business at Spokane Falls, in Washington Territory, and received deposits, discounted notes, and dealt in exchange; that about the seventeenth day of September, 1884, they failed in business, having at the time a large number of promissory notes in the possession of the First National Bank of

Portland, Oregon, which were held by the latter bank as collateral security for over-drafts drawn upon it by said Danford & Ainsworth; that on the twentieth day of September, 1884, the respondent Bigham commenced an action in the said Circuit Court against Danford & Ainsworth to recover various claims on account of certain moneys deposited with them by divers parties which had been assigned to him, said Bigham, and thereupon filed an affidavit and undertaking for the purpose of procuring a writ of attachment to be issued in the said action, and which was thereupon issued by the clerk of said court, and under which said notes were attached; that subsequently to the commencement of the said action, and on the same day it was commenced, the respondents Webber & Foster also commenced an action in the said Circuit Court against said Danford & Ainsworth, on account of moneys deposited by the former with the latter, and also procured a writ of attachment to be issued in their action under which said notes were also attached. Subsequently, and on or about the sixth day of October, 1884, said appellant commenced an action against Danford & Ainsworth in said Circuit Court, on account of moneys he had deposited with them, and in which he sued out an attachment under which said notes were also attached. The suit was in the nature of a creditor's bill, and was brought on behalf of himself and all others in the same interest who would come in and contribute to the expense of maintaining it, and subsequently the bank of Garfield County, and one F. Yandell, who had similar claims against said Danford & Ainsworth, and who had commenced actions thereon in said Circuit Court respectively, and sued out attachments therein, which were also levied upon said notes, were brought in and made defendants in said suit, and are also appellants herein. The attachments in

favor of the appellants and Yandell were subsequent to those of the respondents.

The respondents filed answers in said suit, and upon the hearing thereof, the Circuit Court dismissed the complaint, and from the decree entered thereon this appeal is brought. The said Yandell did not, however, join in the appeal. The appellants claim that the respondents were not entitled to have attachments issued in their said actions, for the reason that said actions were in tort and not upon contract, and that their procurement of said attachment to be issued was a fraud on the appellants' rights in the premises.

No attachment against the property of another can legally issue in this state in any action except an action upon contract, expressed or implied, for the direct payment of money; and an attempt to procure the issuance of such process in any other kind of action is unauthorized, and the process, if issued, would be a nullity. But the respondents' counsel claims that their said actions were not in tort; that they were upon contract, and that they were entitled, under the law, to have attachments issued therein. Under the Civil Code of this state, there are no forms of action in actions at law. It expressly abolishes them. Their nature and character must therefore be ascertained from an examination of the facts alleged constituting the cause.

The original complaint in Bigham's action is not a comely pleading, certainly. It would be difficult to describe its quality. The first count, which is more objectionable than any of the others, alleges, after the introductory part, the following: "And that on the twenty-sixth day of August, 1884, one John Bigham deposited with the defendants $100, to be sent to Seaboard Bank, New York, and $250 to be sent to First National Bank of Portland, Oregon; and that the defend-

ants failed to send said sums to said Seaboard Bank of
New York, and to the First National Bank of Portland,
but converted the same to their own use, to plaintiffs'
damage in the sum of $350." . It is not easy to decipher
what the pleader intended by this. The appellants'
counsel insisted that his intention was to claim for a
tortious conversion of the money, and that possibly may
have been his idea. It is difficult to conclude what an
attorney might mean when he employs such a jargon to
express it. There is no possible way of reconciling his
statement, if the several allegations contained in it are
given the full meaning; which each imports if separately
considered. Depositing the money with a bank to be
sent to another bank implies a purchase of exchange.
No one would suppose for a moment that the deposit
was made with the view that the identical money would
be forwarded. The deposit itself would operate to transfer
the particular money to the bank, and create the rela-
tion of debtor and creditor between it and the depositor,
and the alleged breach, "that the defendants failed to
send said sums," signifies that it was the *amount* of
money deposited, and not *the same* money that was to be
sent. The language is vague and very meager; but
standing by itself, and in the light of its surroundings,
I think it imports a contract to pay a sum of money in
consideration of a deposit of the amount. The pleader
did not, however, stop there, but concluded with an alle-
gation to the effect that the defendants converted the
same to their own use, to plaintiffs' damage of $350.
The appellants' counsel claims that this allegation was
the gist of the action, and that it sounded in tort; but it
will be noticed that the plaintiff in the action stated im-
perfectly a cause of action without this latter allegation.
The statement that the money was deposited with the
defendants therein as bankers, to be sent to the other

banks, and that they failed to send said sums, contained a cause of action, though not stated with that definiteness and certainty required in a pleading. And the concluding portion of the complaint, "that there is now due plaintiffs from defendants the sum of $2,737.83," is a makeweight towards establishing the claim' as a debt. It may be argued, with much plausibility at least, that the action was for a wrongful conversion of the money; but I think it can be claimed with more reason that it was upon contract for the payment of the money. At all events,'it cannot certainly be maintained that it was an action for a tort any stronger than that it was an action upon contract. If the original complaint had confessedly been in tort, I do not think it could have been amended so as to have validated the attachment; but where a complaint is so indefinite and uncertain that its real character in that respect cannot be determined, and the facts of the case . are such that an action upon contract for the payment of money will lie, I think it can be amended so as to uphold an attachment that has been issued in the action. The plaintiffs' attorney in said action very prudently filed an amended complaint therein, which removed the objection considered, and I think, under the view expressed, that he had the right to so amend the pleading. As to the complaint in Webber & Foster's action, there can be no question but that it was upon contract. I think that it is too obvious to require any consideration. But the appellants' counsel contends that in the amendment of Bigham's complaint, the amount claimed in the original complaint, and which the attachment was sued out to secure, was enlarged from $2,737.83 to $3,087.88, and that it had the effect to render the attachment invalid, as against the appellant's attachment, and cites *Willis* v. *Crooker*, 1 Pick. 204; *Fairfield* v. *Baldwin*, 11 Id. 388; *Page*

v. *Jewett*, 46 N. H. 444.   These cases seem to support the
counsel's position; but it is claimed in later cases that
there was an element of fraud connected with them,
which influenced the determination of the court therein.
(*Felton* v. *Wadsworth*, 7 Cush. 587; *Mendes* v. *Freiters*, 16
Nev. 396.)

I do not know how a court would be able to conclude
that an amendment of the complaint in an action in
which an attachment had issued would operate to dis-
solve the attachment, although a greater sum was de-
manded in the amended complaint than in the original,
if the amendment were allowed in furtherance of justice.
The attachment is only collateral to the action.   The
amendment, in such case, has no connection with it, and
an exercise of the right cannot possibly mislead a subse-
quent attaching creditor to his injury, as his rights in the
property attached are subject to such right of amend-
ment.   The Code provides that any pleading may be once
amended by the party, of course without costs and with-
out prejudice to the proceedings already had at any time
before the period for answering shall expire. (Civil Code,
sec. 97.)   And thereafter, at certain stages in the action,
such amendment may be allowed by the court, upon such
terms as may be just and proper.   It cannot be unlawful
to exercise a privilege accorded by law, especially where
it is secured and acted upon in good faith.   If the amend-
ment had been made for the purpose of obtaining an un-
due advantage over the appellants, it would present a
different question, but there is not the slightest proof in
the case that such was the object.   On the contrary, it
appears that it was in furtherance of justice, and that
ought not to prejudice the said respondents.   It is not
shown from the record that the amendment included any
new cause of action, or embraced any other claim than
was contained in the original complaint; and I think it

was virtually conceded on the argument that the discrep-
ancy between the amounts claimed in the two resulted
from an error of computation, made when the original
complaint was drawn.    The appellants' counsel also
claims that it is not shown in the amended complaint
that the cause of action alleged therein had accrued when
Bigham's action against Danford & Ainsworth, in
which the attachment issued, was commenced.    The
allegations therein concerning the $100 item are, that
on the fifteenth day of August, 1884, the defendants, in
consideration of the sum of $100 to them paid by John
Bigham, by their bill of exchange requested the Seaboard
Bank of New York to pay said John Bigham $100 at
sight; also, that the bill of exchange was presented to
said Seaboard Bank on the fifteenth day of September,
1884, for acceptance, which was refused; that it was pro-
tested, and had not been paid.    And a similar statement is
set out in regard to the $250 item.    The counsel contends
that these bills should have been presented for payment
instead of acceptance; that there are days of grace al-
lowed on sight bills, and therefore that the bills had not
strictly been dishonored when the action was begun on
the twentieth day of September, 1884.    This question
was before the Circuit Court in said action.    It appears
from the record that a demurrer was interposed on be-
half of Danford & Ainsworth to Bigham's complaint
therein, which the Circuit Court overruled, and awarded
a judgment in Bigham's favor, which was rendered long
before the appellants commenced their said suit.    In
giving judgment in the said action, the Circuit Court
necessarily determined that Danford & Ainsworth were
liable upon said bills of exchange, and that decision can-
not be reviewed in this proceeding.    This court might
impeach the judgment obtained in the said action for
fraud, but it has no power to reverse it for error, except

Opinion of the Court—Thayer, J.

upon appeal therefrom. Consequently, whatever might be our view as to the correctness of the last point raised by the appellants' counsel, we cannot consider it, except so far as it bears upon the matter of fraud alleged in the complaint. The respondents' claims stood upon the same footing as the appellants', and so far as I can discover, are equally meritorious. They all arose out of the defalcation and rascality of Danford & Ainsworth, and one was as much entitled to payment, so far as I can see, as the other. The respondent gained an advantage in the matter by being first in time, and a mere irregularity in their proceedings to enforce them is not evidence of fraud. I am not prepared to say that their cause of action did not mature when the bills of exchange were presented, and the drawees refused to accept them; but conceding that they should have been presented for payment, and the days of grace allowed, before protesting them, it is a mere technical objection, which a court of equity cannot consider in this kind of suit in the absence of actual fraud. I think the decree appealed from should be affirmed.

The chief justice concurs herein, except as to the effect of the amendment.

NOTE. Upon a rehearing of this cause at the October term, 1886, it was held that, as it did not clearly appear that the difference between the sum claimed in the original complaint in the case of *Bigham* v. *Danford & Ainsworth* and that claimed in the amended complaint was the result of a mere clerical error, the lien of the attachment levied in said cause would extend only to the sum claimed in the original complaint.—REPORTER.